IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00783-PAB-NYW

DWIGHT PHILLIP BIVENS,

    Plaintiff,

v.

BLAIKE,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This matter comes before the court on the Motion to Dismiss filed on September 22, 2021 by John McGaugh ("Dr. McGaugh")[1] and Defendant Blaike ("Defendant" or "Officer Blaike"). [Doc. 36]. The court considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated September 15, 2021, [Doc. 35], and the Memorandum dated September 22, 2021. [Doc. 38]. The court concludes that oral argument will not materially assist in the resolution of this matter. Having reviewed the Motion, the related briefing, and the applicable case law, this court respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED**.

---

[1] The Motion to Dismiss was filed by Officer Blaike and Dr. McGaugh. *See* [Doc. 36 at 2, 5]. In addition to filing the Motion to Dismiss, Dr. McGaugh simultaneously filed a Motion for Summary Judgment on Plaintiff's sole claim against him. *See* [Doc. 37]. On March 7, 2022, this court recommended that the Motion for Summary Judgment be granted and that Plaintiff's claim against Dr. McGaugh be dismissed without prejudice for failure to exhaust her administrative remedies. [Doc. 60 at 14-15]. No Party objected to the Recommendation, and the presiding judge accepted the Recommendation on April 12, 2022. [Doc. 66]. As a result, Dr. McGaugh was dismissed as a Defendant from this case. *See* [*id.* at 2]. For this reason, the court addresses the Motion to Dismiss only as to Plaintiff's remaining claim against Officer Blaike.

## BACKGROUND

This court draws the following facts from the Prisoner Complaint (the "Complaint") [Doc. 1] and presumes they are true for purposes of the Motion to Dismiss. Plaintiff Dwight Phillip Bivens ("Plaintiff" or "Ms. Bivens") is a transgender inmate who at all times relevant to this matter was housed at the Federal Correctional Institute in Florence, Colorado ("FCI Florence") within the Federal Bureau of Prisons ("BOP"). [Doc. 1 at 2]. While housed at FCI Florence, Ms. Bivens underwent hormone replacement therapy, which resulted in her development of "female sex characteristics," including the development of breasts. [*Id.* at 6].

On or about June 22, 2020, Plaintiff and her cell mate were being escorted from their cell by Officer Blaike, a correctional officer at FCI Florence. [*Id.* at 4, 6]. Officer Blaike "exhibited inappropriate sexually wanton behavior" by making remarks about Plaintiff's breasts and butt that were sexual in nature. [*Id.* at 6]. Officer Blaike then told Plaintiff that he wanted to touch her and requested that Plaintiff "face the wall and submit to a pat search." [*Id.*]. After Plaintiff informed Officer Blaike that she was not comfortable being searched by a male officer, he then demanded that Plaintiff submit to a search. [*Id.*]. Officer Blaike "caress[ed] his fingers into Plaintiff's breasts[,] groping and squeezing them." [*Id.*]. While Ms. Bivens cried in pain, Officer Blaike laughed. [*Id.*]. Plaintiff asserts that "any sexual assault of a prisoner by a prison employee constitutes cruel and unusual punishment." [*Id.*].

Plaintiff initiated this civil action on March 16, 2021, asserting four claims arising under the Eighth Amendment. *See generally* [*id.*]. Specifically, Ms. Bivens asserted (1) a medical deliberate indifference claim against Dr. McGaugh, alleging that Dr. McGaugh's alteration of her hormone therapy treatment caused her to suffer an extreme adverse reaction, [*id.* at 5]; (2) an excessive force claim against Officer Blaike, [*id.* at 6]; (3) a claim asserting that Correctional

2

Officer Guardno made lewd comments to Plaintiff, which caused her to be in danger of sexual assault, [*id.*]; and (4) a claim asserting that Correctional Officer Batson sexually assaulted her by referring to her genitalia and referring to her with incorrect pronouns. [*Id.*]. Upon initial review of the Complaint, the Honorable Gordon P. Gallagher recommended that Plaintiff's third and fourth claims be dismissed, concluding that they failed to state a cognizable claim under the Eighth Amendment. [Doc. 9 at 8]. Judge Gallagher further recommended, however, that Ms. Bivens's first two claims be drawn to a presiding judge. [*Id.*]. The Honorable Lewis T. Babcock accepted the Recommendation, dismissed Plaintiff's third and fourth claims, and dismissed Correctional Officers Guardno and Batson from this action. [Doc. 14 at 2]. The case was subsequently drawn to the undersigned on May 21, 2021, [Doc. 15], but upon the Parties' non-consent, the case was re-assigned to the Honorable Philip A. Brimmer, [Doc. 34], who referred the matter to the undersigned. [Doc. 35].

The instant Motion to Dismiss was filed on September 22, 2021, [Doc. 36], and was referred to the undersigned for recommendation. [Doc. 38]. Plaintiff responded to the Motion to Dismiss on October 7, 2021, *see* [Doc. 43], to which Defendant replied. [Doc. 54].[2] Thereafter, Dr. McGaugh was dismissed as a Defendant in this matter upon the grant of his Motion for Summary Judgment. *See* [Doc. 37; Doc. 60; Doc. 66]. As a result, Plaintiff's sole remaining claim is her Eighth Amendment excessive force claim against Officer Blaike. *See* [Doc. 1 at 6; Doc. 14;

---

[2] On January 3, 2022, Plaintiff filed a "Traverse to Motion to Dismiss" in which she "stands by her original motion and argues that her position meets all the requirements to move forward with her action." [Doc. 59 at 1]. Because this document was filed after Plaintiff's October 22, 2021 deadline to respond to the Motion to Dismiss, *see* [Doc. 39], the court does not consider this document in issuing this Recommendation. Even if this court were to substantively consider Plaintiff's filing, however, it would not alter this Recommendation.

Doc. 66]. The court now turns to the Motion to Dismiss and considers the Parties' arguments below.

## LEGAL STANDARD

### I.     Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that pro se litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible"). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## II.     Pro Se Pleadings

In applying the above principles, this court is mindful that Ms. Bivens proceeds pro se and the court thus affords her papers and filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the court cannot and does not act as her advocate, *Hall*, 935 F.2d at 1110, and applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cnty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

Plaintiff asserts her sole remaining claim against Officer Blaike pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *See* [Doc. 1 at 3]. In this claim, Plaintiff alleges that she was sexually assaulted by Officer Blaike during a pat-down search in violation of her Eighth Amendment right to be free from excessive force. [*Id.* at 6]. Officer Blaike moves to dismiss Plaintiff's excessive force claim for lack of a viable *Bivens* remedy. [Doc. 36 at 5].

## I.      *Bivens* Jurisprudence

In *Bivens*, the Supreme Court of the United States established that an individual may seek monetary damages from a federal official in his or her individual capacity for an alleged violation of the Fourth Amendment's prohibition on unreasonable search and seizure, even in the absence of statutory authority. *Bivens*, 403 U.S. at 396-97. The *Bivens* Court rejected the proposition that the Fourth Amendment was not an independent limitation upon the exercise of federal power, observing that "damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials should hardly *see*m a surprising proposition." *Id.* at 394, 395. In so doing, the Supreme Court found that the case presented no special factors counseling hesitation in the absence of affirmative action by Congress. *Id.* at 396.

As jurisprudence developed, it became clear that *Bivens* was not co-extensive to 42 U.S.C. § 1983, which provides an avenue for a plaintiff to address constitutional violations perpetuated by state actors.[3] The Supreme Court has limited the applicability of *Bivens* to only a handful of constitutional violations. *See, e.g.*, *Bivens*, 403 U.S. at 396 (providing a remedy for violations under the Fourth Amendment); *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (providing a *Bivens* remedy for gender discrimination under the Fifth Amendment Due Process Clause); *Carlson v. Green*, 446 U.S. 14, 18-21 (1980) (providing a *Bivens* remedy for failure to provide adequate medical treatment under the Eighth Amendment Cruel and Unusual Punishments Clause). Given concerns regarding the separation of powers between the legislative and judicial branches of government, the Supreme Court has cautioned lower courts not to imply causes of action under *Bivens* where no statutory authority exists, explaining that such a task is better fit for Congress. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856-57 (2017) ("[T]he Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity.").

In its *Bivens* jurisprudence, the Supreme Court articulated two questions that the court must address before implying a *Bivens* remedy for a claim not captured by *Bivens*, *Davis*, or *Carlson*. First, the court must determine whether the claim arises in a new context, which broadly encompasses any claims "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (internal quotations omitted). If the case does present a new context, the court must then determine whether "there are

---

[3] Section 1983 has been extended to private actors in certain circumstances as well. *See, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 934 (1982) (holding that private actors may be liable under § 1983 when the action is fairly attributable to the State); *Wittner v. Banner Health*, 720 F.3d 770, 777 (10th Cir. 2013) (observing that a private actor can be transformed into a state actor under the "joint action" test, in which a court inquires whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights).

special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857 (internal quotations omitted). Recently, however, the Supreme Court reframed this two-part test. *See generally Egbert v. Boule*, 596 U.S. ----, --- S. Ct. ----, 2022 WL 2056291 (2022). In *Egbert*, the Court acknowledged that its precedents "describe two steps," but suggested that these steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at *6. The Supreme Court instructed that if there is "even a single" rational reason to defer to Congress to create a remedy for relief, "a court may not recognize a *Bivens* remedy." *Id.* at *5-6. In so instructing, the Supreme Court suggested that a rational reason to defer to Congress will be present "in most every case." *Id.* at *5.

While the *Egbert* Court "recognize[d] that [the Court's] two-step [*Bivens*] inquiry really boils down to a 'single question,'"—i.e., whether there is "any reason" to believe that Congress may be better suited than a court to "weigh the costs and benefits of allowing a damages action to proceed," *see id.* at *11 (Gorsuch, J., concurring), the Court did not expressly overrule *Bivens* or the line of cases employing the two-part test. *See id.* at *11;[4] *see also, e.g.*, *Hernandez*, 140 S. Ct. at 743. Given the recency of the *Egbert* decision, there is no interpreting case law from the Tenth Circuit. But even the dissent recognizes that *Egbert* "rewrites a legal standard" and establishes a "newly announced test." *Egbert*, 2022 WL 2056291, at *12 (Sotomayor, J., dissenting). Accordingly, this court's analysis addresses a single question, i.e., whether "there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at *6.[5]

---

[4] In *Egbert*, the Supreme Court declined to directly reconsider *Bivens*. *See Egbert*, 2022 WL 2056291, at *11. Justice Gorsuch, however, suggested in his concurrence that the Court's decision amounts to an implicit overruling of *Bivens*. *See id.* at *12 (Gorsuch, J., concurring).

[5] Officer Blaike argues that "there is no *Bivens* remedy for Eighth Amendment excessive force claims such as that alleged" by Plaintiff, advancing first that the claim presents a new *Bivens*

## II. The Availability of a *Bivens* Remedy

The court now turns to the relevant inquiry: whether there is any reason to think that Congress might be better equipped to create a damages remedy. In his Motion to Dismiss, Officer Blaike argues that the BOP's administrative grievance process affords Plaintiff adequate relief for her claim; according to Defendant, this alternative remedy "should foreclose creation of a new *Bivens* remedy." [Doc. 36 at 12]. "Both the Tenth Circuit and the Supreme Court have recognized that . . . grievances filed through the BOP's Administrative Remedy Program constitute alternative means of preventing unconstitutional conduct in the prison context." *Lovett v. Ruda*, No. 17-cv-02010-PAB-KLM, 2018 WL 4659111, at *8 (D. Colo. Sept. 28, 2018). Moreover, the Supreme Court has explained that the BOP administrative remedy process provides a "means through which allegedly unconstitutional actions and policies [by BOP officials] can be brought to the attention of the BOP and prevented from recurring." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).

Relevant here, in *Egbert*, the Supreme Court concluded that the existence of an agency's administrative grievance process counseled against recognizing a *Bivens* remedy in the Fourth Amendment excessive-force context. *See Egbert*, 2022 WL 2056291, at *7, *8-9. In *Egbert*, the

---

context, and second, that special factors caution against extending a *Bivens* remedy here. [Doc. 36 at 5, 10, 12]. But the briefing on this matter was completed prior to the Supreme Court's ruling in *Egbert*, and accordingly, this court focuses only upon Defendant's arguments as they pertain to the new framework set forth by the Supreme Court. However, to the extent that Chief Judge Brimmer disagrees with this approach, this court would find, based on the record before it and consistent with a number of other decisions, that Ms. Bivens's claim arises in a new context. *See, e.g.*, *Belt v. Fed. Bureau of Prisons*, 336 F. Supp. 3d 428, 440 (D.N.J. 2018) (concluding that a claim arising out of allegations of sexual assault at the hands of prison officials presents a new *Bivens* context); *Taylor v. Lockett*, No. 5:17-cv-00023-OC-02-PRL, 2019 WL 764023, at *7 (M.D. Fla. Feb. 21, 2019) (same); *Taylor v. United States*, No. 20-cv-00224-DKW-KJM, 2021 WL 920861, at *3 (D. Haw. Mar. 10, 2021) (same); *Longworth v. Mansukhani*, No. 5:19-CT-3199-FL, 2021 WL 4472902, at *4 (E.D.N.C. Sept. 29, 2021) (same); *Brooks v. Hankins*, No. 3:20-cv-599-DPJ-FKB, 2022 WL 350726, at *2 (S.D. Miss. Jan. 14, 2022), *report and recommendation adopted*, 2022 WL 350188 (S.D. Miss. Feb. 4, 2022) (same); *but see Shorter v. United States*, 12 F.4th 366, 375 (3d Cir. 2021) (concluding that an Eighth Amendment excessive force claim based on an alleged sexual assault did not present a new *Bivens* context).

owner of a bed and breakfast asserted a *Bivens* cause of action against a United States Border Patrol agent after the agent allegedly physically assaulted the owner. *Id.* at *4. The District Court, concluding that no *Bivens* remedy existed for the owner's claim, found in favor of the Border Patrol agent, but on appeal, the United States Court of Appeals for the Ninth Circuit reversed. *Id.* The Supreme Court ultimately determined that the Ninth Circuit's conclusion that "there was no reason to hesitate before recognizing a [*Bivens*] cause of action" against the agent was erroneous, as "the Government already ha[d] provided alternative remedies that protect plaintiffs like [the owner]." *Id.* at *7.

Specifically, the *Egbert* Court determined that the Border Patrol's administrative grievance process, through which the Border Patrol is required by federal regulations to "investigate '[a]lleged violations of the standards for enforcement activities' and accept grievances from '[a]ny persons wishing to lodge a complaint,'" *id.* at *8 (quoting 8 C.F.R. §§ 287.10(a)-(b)) (alterations in original), was an alternative available remedy that foreclosed a *Bivens* cause of action for the bed and breakfast owner. *Id.* In so deciding, the Supreme Court instructed that "*Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers'—*i.e.*, the focus is whether the Government has put in place safeguards to 'preven[t]' constitutional violations 'from recurring.'" *Id.* at *9 (quoting *Malesko*, 534 U.S. at 71, 74) (alterations in original). It follows, according to the *Egbert* Court, that "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.*

Notably, the *Egbert* Court rejected the bed and breakfast owner's argument that the Border Patrol's grievance process did not preclude recognition of a *Bivens* remedy because the administrative process was inadequate to provide him any relief, which was based on the owner's

9

assertions that he was not entitled to participate in the grievance process and had no right to judicial review of an unfavorable administrative decision. *Id.* The Supreme Court, noting that it has "never held that a *Bivens* alternative must afford rights to participation or appeal," concluded that "whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts." *Id.* Thus, even if the government's provided alternative remedy is "not as effective as an individual damages remedy," such alternative remedy will nevertheless preclude a *Bivens* cause of action so long as the government put in place safeguards to prevent constitutional violations from recurring. *Id.*

Turning to the instant matter, the court must determine whether, as Defendant suggests,[6] Congress has provided Ms. Bivens an alternative remedy to through the BOP administrative remedy program. The purpose of this program "is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. Similar to the federal agency in *Egbert*, the BOP is required by federal regulation to "[e]stablish procedures for receiving, recording, reviewing, investigating, and responding to [administrative grievances] submitted by an inmate" and to "[c]onduct an investigation into each" grievance. 28 C.F.R. § 542.11(a)(1), (3). To that end, the BOP provides a four-step administrative remedy program to

---

[6] The court notes that Officer Blaike asserts essentially no substantive argument related to the BOP's administrative remedy program. *See* [Doc. 36 at 12]. It is not this court's duty to construct arguments on behalf of Parties or conduct legal research on behalf of Parties. *See Jackson-Cobb v. Sprint United Mgmt.*, 173 F. Supp. 3d 1139, 1145 n.5 (D. Colo. 2016); *United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) (arguments raised only in a perfunctory manner may be deemed waived). However, the court further notes that Officer Blaike does cite one Tenth Circuit case in support of his argument that several alternative remedies—including the existence of an administrative grievance process—preclude a *Bivens* remedy here. *See* [Doc. 36 at 12 (citing *K.B. v. Perez*, 664 F. App'x 756, 759 (10th Cir. 2016))]. Accordingly, although Defendant's argument is not well-developed, the court declines to deem Officer Blaike's argument waived.

address inmate grievances arising out of the inmate's confinement. *See* 28 C.F.R. §§ 542.13, 542.14, 542.15.

In accordance with binding Supreme Court precedent, the court concludes that the BOP administrative remedy process provides Ms. Bivens with an alternative remedy, and thus, there are adequate grounds to conclude that Congress is better equipped to create a damages remedy, precluding any right to relief under *Bivens*. Indeed, the court can ascertain no meaningful difference between the instant matter, where federal regulations require the BOP to receive, review, and investigate all prison grievances, *see* 28 C.F.R. § 542.11(a)(1), (3), and *Egbert*, where the Supreme Court analyzed a grievance procedure which required Border Patrol officials to accept grievances from any person wishing to lodge a complaint. *See* 8 C.F.R. § 287.10(a)-(b); *see also Egbert*, 2022 WL 2056291, at *8. A *Bivens* alternative remedy must be designed to deter unconstitutional acts of individual officers, *Egbert*, 2022 WL 2056291, at *9, and the BOP administrative remedy process is a "means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP *and prevented from recurring*." *Malesko*, 534 U.S. at 74 (emphasis added). Under *Egbert*, this alternative remedy is *alone* "reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 2022 WL 2056291, at *6 (quoting *Ziglar*, 137 S. Ct. at 1858).

Ms. Bivens does not directly address this alternative remedy in her Response. *See generally* [Doc. 43]. Instead, she challenges Defendant's assertion that the BOP is in a better position to regulate the conduct of BOP staff on the basis that she "is claiming a constitutional violation, not an institutional infraction by some correctional officer." [*Id.* at 4]. Even construing this argument liberally as an assertion that the BOP administrative remedy process is not an appropriate vehicle to address an alleged constitutional violation, the court respectfully disagrees.

As explained above, the purpose of the BOP's administrative grievance process is to "allow an inmate to seek formal review of an issue relating to *any aspect* of his/her own confinement." 28 C.F.R. § 542.10(a) (emphasis added). Indeed, the Supreme Court has recognized the ability of this administrative process to bring unconstitutional actions to the attention of the BOP and to prevent those unconstitutional acts from reoccurring. *Malesko*, 534 U.S. at 74. Moreover, the sufficiency of the administrative remedy process to address alleged constitutional violations is implicit in the Prison Litigation Reform Act, which requires inmates to exhaust their administrative remedies prior to bringing constitutional claims in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). In any event, "whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts," *Egbert*, 2022 WL 2056291, at *9, and by not raising any argument with respect to the administrative remedy program in her Response, Ms. Bivens has not provided the court with any reason to doubt that this process affords her an alternative remedy. *See generally* [Doc. 43]; *Egbert*, 2022 WL 2056291, at *9.

While the court's above conclusion is dispositive of the instant Motion, because this court proceeds by Recommendation, the court briefly addresses Officer Blaike's alternative argument that the PREA provides an alternative remedial structure for Plaintiff to obtain relief. *See* [Doc. 36 at 10]. Specifically, while Defendant acknowledges that the PREA "does not empower an inmate to seek damages against a BOP employee in their individual capacity as a *Bivens* claim would," he asserts that the PREA "provides for robust disciplinary sanctions against prison staff found to have committed sexual assault,' including that '[t]ermination shall be the presumptive disciplinary

12

sanction for staff who have engaged in sexual abuse.'" [*Id.* at 11 (quoting 28 C.F.R. § 115.76(b)) (alteration in original)]. Ms. Bivens does not respond to this argument. *See generally* [Doc. 43].

The PREA was enacted to "establish a zero-tolerance standard for the incidence of [sexual assault] in prisons in the United States." 34 U.S.C. § 30302(1); *see also* 34 U.S.C. § 30309(9), (11). "Under [the] PREA's accompanying regulations, a correctional facility must 'provide multiple internal ways for inmates to privately report sexual abuse and sexual harassment, retaliation by other inmates or staff for reporting sexual abuse and sexual harassment, and staff neglect or violation of responsibilities that may have contributed to such incidents.'" *Martinez v. Padilla*, No. CV 19-889 JCH/GJF, 2021 WL 309065, at *1 n.2 (D.N.M. Jan. 29, 2021) (quoting 28 C.F.R. § 115.51(a)). "[N]umerous district courts have concluded that the [PREA] . . . does not create a private right of action" in court. *Grado v. Horton*, No. CV 15-0573 LH/CG, 2015 WL 13667410, at *5 (D.N.M. Oct. 30, 2015), *report and recommendation adopted*, 2015 WL 13667000 (D.N.M. Dec. 10, 2015). Rather, the PREA provides that BOP staff "shall be subject to disciplinary sanctions up to and including termination for violating agency sexual abuse or sexual harassment policies." 28 C.F.R. § 115.76(a).

As the Supreme Court recognized in *Egbert*, "*Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers'—*i.e.*, the focus is whether the Government has put in place safeguards to 'preven[t]' constitutional violations 'from recurring.'" *Egbert*, 2022 WL 2056291, at *9 (quoting *Malesko*, 534 U.S. at 71, 74). Similar to the remedies discussed in *Egbert*, the PREA mandates that BOP officials (1) provide "multiple internal ways for inmates to privately report sexual abuse and sexual harassment," (2) provide "at least one way for inmates to report abuse or harassment to a public or private entity or office that is not part of the [BOP]," (3) "accept reports made verbally, in writing, anonymously, and from third parties," and (4) provide "a method

13

for staff to privately report sexual abuse and sexual harassment of inmates." 28 C.F.R. § 115.51(a)-(d). In addition, BOP staff are required to immediately report any knowledge, suspicion, or information concerning an incident of sexual abuse or sexual harassment occurring in a BOP facility, and the facility is then required to report all allegations of abuse or harassment to designated investigators. 28 C.F.R. § 115.61(a), (e). Staff who violate the BOP's abuse or harassment policies "shall be subject to disciplinary sanctions," and the presumptive disciplinary sanction for a staff member who has committed sexual abuse is termination from employment. 28 C.F.R. § 115.76(a)-(b).

In light of the PREA's purpose—to "establish a zero-tolerance standard for the incidence of [sexual assault] in prisons in the United States," 34 U.S.C. § 30302(1)—and the numerous federal regulations governing reporting procedure and providing that the presumptive discipline for violations by staff members is termination, the court concludes that this issue falls directly under the Supreme Court's instruction in *Egbert*: "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 2022 WL 2056291, at *9. Accordingly, the court concludes that through the PREA, "Congress has provided alternative remedies for aggrieved parties in [Ms. Bivens's] position that independently foreclose a *Bivens* action here," and this court cannot "second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at *8.

In sum, the court concludes that no *Bivens* remedy exists for Plaintiff's remaining Eighth Amendment Claim. For this reason, the court respectfully **RECOMMENDS** that the Motion to

Dismiss be **GRANTED** and that Plaintiff's remaining claim be **DISMISSED** for lack of an available *Bivens* remedy.[7]

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1)   The Motion to Dismiss [Doc. 36] be **GRANTED**; and

(2)   Plaintiff's remaining claim be **DISMISSED** for lack of an available *Bivens* remedy.[8]

In addition, it is **ORDERED** that:

---

[7] Defendant does not address whether Plaintiff's remaining claim should be dismissed with or without prejudice. *See* [Doc. 36 at 15]. This court notes that courts within this District have dismissed claims with prejudice when the basis for dismissal is a lack of a *Bivens* remedy. *See, e.g.*, *O'Banion v. Matevousian*, No. 19-cv-02517-WJM-KLM, 2020 WL 5559473, at *9 (D. Colo. Sept. 17, 2020); *Houck v. Denham*, No. 15-cv-00894-KMT, 2017 WL 11425592, at *6 (D. Colo. Mar. 27, 2017). However, because this court proceeds by Recommendation, the court reserves the determination of whether Plaintiff's remaining claim should be dismissed with or without prejudice for the presiding judge.

[8] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).

(1) A copy of this Recommendation, marked as legal mail, shall be sent to:

> Dwight Phillip Bivens, #75775-408
> Greenville Federal Correctional Institution
> Inmate Mail/Parcels
> P.O. Box 5000
> Greenville, IL 62246

DATED: June 15, 2022

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge